UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON ALGRA,

                Petitioner,                Case No. 1:16-cv-965

v.                                                Honorable Paul L. Maloney

SHANE JACKSON,

                Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations**

Petitioner Jason Robert Algra presently is incarcerated at the Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan. He is serving five concurrent terms of imprisonment of 5 years to 15 years following his jury conviction on five counts of third-degree criminal sexual conduct in violation of MICH. COMP. LAWS § 750.520d(1)(e). The convictions were based on Petitioner's conduct with respect to one victim/complainant (herein "Complainant 1"). The jury acquitted Petitioner of three counts of first degree criminal sexual conduct involving a second complainant (herein "Complainant 2").

Complainant 1 testified that he and Petitioner had engaged in consensual sexual relations. (Mich. Ct. of Appeals Op., ECF No. 1-1, PageID.70.) Those acts constituted third-degree criminal sexual conduct because Complainant 1 was seventeen-years-old at the time and Petitioner taught and coached swimming at Complainant 1's school. When Complainant 1 first reported the sexual encounters, he spoke with Detective Jason Gooley. (*Id.*) Complainant 1 testified that he was not entirely truthful in his interview with Detective Gooley because he was embarrassed and afraid because of the ridicule suffered by Complainant 2 when he came forward. (*Id.*) The jury convicted Petitioner on each of the five counts that related to Complainant 1.

Complainant 2 testified that he and Petitioner had engaged in consensual sexual relations on several occasions. (*Id.*) Those acts constituted first-degree criminal sexual conduct because Complainant 2 was fifteen-years-old at the time and Petitioner taught and coached swimming at Complainant 2's school. Several witnesses testified that Complainant 2 "was dramatic and had a tendency to exaggerate." (*Id.*) The jury acquitted Petitioner on each of the three counts that related to Complainant 2.

On March 21, 2014, the trial court sentenced Petitioner as set forth above. Petitioner, through appellate counsel, filed a timely claim of appeal in the Michigan court of appeals. Petitioner's appellate brief raised only one issue:

> The Sixth Amendment right to confrontation includes the right to all proper cross-examination. The enforcement of this right through the Fourteenth Amendment also includes a trial free of error which result in a verdict that [is] unreliable and fundamentally unfair. Where the trial court made five sign[i]ficant evidentiary errors of a constitutional and non-constitutional nature which were all preserved, was the verdict unreliable such that it must be reversed.

(Def.'s/Appellant's Br. on Appeal, ECF No. 1-1, PageID.22.) In an unpublished opinion issued on September 8, 2015, the court of appeals reviewed each of the "significant evidentiary errors." The court rejected Petitioner's arguments and affirmed his convictions. (Mich. Ct. of Appeals Op., ECF No. 1-1, PageID.70-75.)

Petitioner sought leave to appeal to the Michigan Supreme Court. He indicates that he raised the same issues in the supreme court, but he does not attach his application or brief. The supreme court denied leave to appeal on May 2, 2016. (Mich. Ord., ECF No. 1-1, PageID.76.) Petitioner did not petition for writ of certiorari to the United States Supreme Court.

In his habeas application, filed on or about August 1, 2016, Petitioner raises five issues, five of the evidentiary issues purportedly raised under the umbrella of one issue in his direct appeal.[1] Petitioner states the five evidentiary issues as follows:

1. The defense contemporaneously objected to [the victim's] comment with regard to how the second complainant was treated at school.

---

[1] Petitioner's appeal brief purported to raise only five evidentiary issues. It raised more than five. His habeas petition, however, is limited to the five issues stated below.

    2.    Defense counsel sought to question Dawn Anderson about whether an alleged victim, Mr. Devine, exaggerates when he tells about events.

    3.    The trial court had previously ruled that there would be no testimony concerning nude pictures of the Petitioner.

    4.    Detective Gooly was allowed to testify as to information found on Petitioner's computer which was unfairly prejudicial.

    5.    Use of Facebook posting by the prosecutor to impeach Wessels. Mr. Wessels admitted his portion of the document but it was still improperly admitted as hearsay over the defense objection.

(ECF No. 1.) Although Petitioner's statements do not clearly identify errors, much less constitutional errors, as to each "issue" he refers to the pages of the appeal briefs where a clearer statement of the error appears.

## Discussion

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the

evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts

enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## I.     Prosecutorial misconduct

Misconduct by a prosecutor can rise to the level of a due process violation. *Lundy v. Campbell*, 888 F.2d 467, 474 (6th Cir. 1989). However, before habeas corpus relief becomes available, the misconduct must be so egregious as to deny petitioner a fundamentally fair trial. *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir.1993). The habeas court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). In addition, the court may view any misconduct in light of the strength of the competent proofs tending to establish guilt. *See Angel v. Overburg*, 682 F.2d 605, 608 (6th Cir. 1982) (en banc). "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra*, 4 F.3d at 1355 (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (internal quotation omitted).

Petitioner complains that the prosecutor pursued a line of questioning with respect to Complainant 1 that was so prejudicial it undermined the verdict:

> [Complainant 1] admitted that his first story to the detective was not complete. When asked why he did not tell everything, [Complainant 1] claimed that he was embarrassed and afraid. Tl, at 103. When asked to be specific about the source of his fear, [Complainant 1] said that he was afraid of "public ridicule" because of what happened to another victim. Over defense counsel's [ob]jection, he was allowed to provide an answer. He then said "I watched the other victim get terrorized at school." Tl, at 104:3-23. Upon a renewed objection that was not even completed, the trial court instructed the jury they were to disregard any characterization of another victim. *Id*, at 104:21-23.
>
> The trial court then instructed the prosecutor to ask more specific questions. When she asked [Complainant 1] to describe what he observed concerning [Complainant 2], [Complainant 1] then again said "he was terrorized; he was made fun of." *Id*, at 105: 11-13. Upon an objection, the trial court noted that the answer was a conclusion, not an observation and he again told the prosecutor to be more specific in her questions. *Id*, at 105: 14-23. The prosecutor then promptly used the conclusory word "terrorized" in her question and asked [Complainant 1] to describe his observations. He began to testify as

>to witnessing other people talking about [Complainant 2] badly which prompted yet another objection that was again sustained. The prosecutor then provided her basis for justifying the question at which point trial court ruled that the prejudicial effect greatly outweighed the probative value. The trial court instructed the jury to again disregard the question and answer. *Id*, at 105:25-107:1.

(Def.'s/Appellant's Br. on Appeal, ECF No. 1-1, PageID.45-46.) Petitioner contends it was the prosecutor's intention to inflame the jury. The Michigan Court of Appeals rejected Petitioner's claim finding that "[n]othing about the prosecutor's questions suggests that she was deliberately attempting to inflame the jury rather than to explore a pertinent issue." (Mich. Ct. of Appeals Op., ECF No. 1-1, PageID.71.) For that reason, the court of appeals concluded there was no prosecutorial misconduct.

Whether or not the prosecutor acted properly with respect to her attempts to elicit this testimony from Complainant 1, Petitioner has failed to show how the questions or testimony resulted in prejudice to him. One might expect that Complainant 1's testimony that others "terrorized" Complainant 2, or spoke derogatorily about him after he came forward, could evoke the jury's sympathy for Complainant 2. But Petitioner was acquitted on all the charges relating to Complainant 2. To the extent the testimony created any sympathy in Complainant 2's favor, it simply cannot be said that the sympathy affected the verdict to Petitioner's detriment. Perhaps the jury's lack of regard for the purportedly prejudicial testimony is not surprising in that "[j]urors are 'almost invariabl[y] assum[ed]' to follow their instructions . . . ." *Nobles v. Woods*, 613 F. App'x 487, 492 (6th Cir. 2015) (quoting *Richardson v. Marsh,* 481 U.S. 200, 206 (1987)).

Petitioner has failed to establish that the Michigan Court of Appeals' rejection of his prosecutorial misconduct claim is based on an unreasonable determination of the facts. He has also failed

to show the state court's decision is contrary to or an unreasonable application of clearly established federal law. His prosecutorial misconduct claim is, therefore, without merit.

## II. The improper admission or exclusion of evidence

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

The Sixth Circuit has applied the following standard in cases under the AEDPA:

> Habeas petitioners are not entitled to relief unless an error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). A petitioner will prevail where "a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law" substantially affected a jury's verdict. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). However, we will grant federal habeas corpus relief only where a violation of a state's evidentiary rule results in the denial of fundamental fairness, and therefore, a violation of due process. *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988). "The standard in determining whether the admission of prejudicial

evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Leverett v. Spears*, 877 F2d 921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)).

*Brown v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999). Petitioner has not met this difficult standard with respect to any of the evidentiary rulings that he challenges.

### A. Testimony regarding Complainant 2's tendency to exaggerate

Petitioner complains that he was not permitted to elicit testimony from the school counselor that Complainant 2 would "over-exaggerate" things. He describes the testimony of the school counselor, Dawn Anderson, as follows:

> [T]his witness was called by the government and her testimony started at page 112 of Volume 2. She was a counselor for 9th and 10th graders. *Id.* The prosecutor had her explain her duties as a counselor and confirm that in a school year she sees hundreds of students. *Id*, at 113. The prosecutor specifically asked her how she knew [Complainant 2] and she explained the basics of his contacts with her: friendship issues, issues with his father, and a split living arrangement with his parents. *Id*, at 116 - 117. The prosecutor asked Ms. Anderson about teenagers in general and [Complainant 2] in particular being dramatic. *Id*, at 118. She described [Complainant 2] as "probably at the higher end of the dramatic range." *Id.* The prosecutor then asked if there were other students "just as dramatic as [Complainant 2]" to which she responded "yes." *Id.* The direct examination continued on through page 129.
>
> The defense brought up [Complainant 2] to Ms. Anderson at the bottom of page 131. It was confirmed that [Complainant 2] was one of her "frequent fliers." *Id*, 131-132. Defense counsel sought to place [Complainant 2] in the range of the dramatic teenagers that she worked with but did not use the word exaggerate. *Id*, at 132. Defense counsel then asked if some of her counseling was related to [Complainant 2's] being overly dramatic and Ms. Anderson confirmed that it was. Defendant['s] counsel then asked if she would describe [Complainant 2] as an "attention seeker" and she again confirmed that description. *Id*, at 133. Defense counsel did not use the word exaggerate.
>
> At page 135, defense counsel changed topics and had Ms. Anderson talk about Defendant's classroom. When the objection occurred, defense counsel's question was:

> Q: All right. With [Complainant 2] there were occasions when you worked with him where, um, he would over-exaggerate things?
>
> MS. MORTON: Objection. This had been asked and answered three times I believe by this witness.
>
> THE COURT: Sustained.
>
> *Id*, 137:14-19. On the contrary, no one had used the word "exaggerate" with Ms. Anderson up to this point. It is unexplained why the trial court did not give defense counsel an opportunity to respond before ruling.

(Def.-Appellant's Br. on Appeal, ECF No. 1-1, PageID.47-48.) The Michigan Court of Appeals rejected Petitioner's challenge to the exclusion of the evidence. The court noted that "[v]arious witnesses testified that [Complainant 2] was dramatic and had a tendency to exaggerate." (Mich. Ct. Appeals Op., ECF No. 1-1, PageID.70.) Without regard to the cumulative nature of the testimony, the court of appeals concluded that Petitioner could not prevail on his claim because he could not show prejudice. The error, if any, was not outcome determinative, it was harmless. (*Id*. at PageID.74-75.) The jury acquitted Petitioner of all charges involving Complainant 2. (*Id*.) The court of appeals conclusions with regard to the absence of prejudice are reasonable. Petitioner has failed to demonstrate that the state court's resolution of this challenge was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, his habeas challenge has no merit.

### B.     Testimony regarding nude pictures

Petitioner next complains that Detective Jeffrey Fellows was permitted to testify regarding images he found on Petitioner's home computer and work computer. Certain images showed unidentified and unclothed male genitalia; other images showed Petitioner, unclothed. (Def.'s/Appellant's Br. on Appeal, ECF No. 1-1, PageID.50.) No images were introduced, but Detective Fellows was permitted

to testify regarding the presence and general content of the images. (*Id.*) The prosecutor argued the testimony was relevant to call into question whether Petitioner acted professionally with respect to school property, a subject raised by defense counsel's questioning. (*Id.*)

Petitioner contends the justification offered by the prosecutor was a smokescreen. The prosecutor actually wanted to introduce testimony regarding the nude images because it had the effect of improperly bolstering Complainant 2's credibility. Complainant 2 testified that Petitioner had sent him digital images of unclothed male genitalia. Petitioner claims that permitting the testimony regarding the male genitalia images on his computer invited the jury to conclude that the images from his computer were the same images that Complainant 2 had received.

For the reasons stated above, if the harm Petitioner claims is the bolstering of Complainant 2's credibility, his claim has no merit. He simply cannot show that the introduction of the evidence likely altered the outcome. Where the jury obviously concluded that Complainant 2 was not credible, the introduction of evidence that bolstered his credibility could not have been a "crucial, critical highly significant factor." Petitioner's challenge regarding the nude image testimony is without merit.

     **C.**     **Testimony regarding an April 2, 2011 digital conversation**

Petitioner next complains that Detective Jason Gooley was permitted to testify regarding a digital conversation between Petitioner and Davey Robinson. The conversation was reproduced on Exhibit 27. Detective Gooley testified as follows:

    Q:    .... Um, the first message indicates the author is Davey Robinson at--on April 2nd of 2011. What does that first message say?

    A:    Who's there with you.

    Q:    And then the response by Jason Algra?

> A:      Now I have to go and pick up Jess's bro at-I believe it's supposed to be Spiral.
>
> Q:      Okay. And then the next message again from Jason Algra?
>
> A:      Lol.
>
> Q:      And then the next message from Jason Algra?
>
> A:      I am alone right now.
>
> Q:      And then finally the next message?
>
> A:      Waiting for Jesse to get home.
>
> Q:      Thank you.

(Def.'s/Appellant's Br. on Appeal, ECF No. 1-1, PageID.53.) The prosecutor offered the testimony to disprove Petitioner's alibi. The parties ultimately determined that the digital conversation was wholly irrelevant to the alibi. (*Id*.) Petitioner moved for a mistrial. The court denied the motion and instead instructed the jury to disregard the exhibit. (*Id*.)

Petitioner now argues that the curative instruction was insufficient because it informed the jury to disregard the exhibit, but not the testimony. (*Id*. at p. 54.) Petitioner contends he was prejudiced because Complainant 2 had previously testified that he was too young to get into Spiral and that Spiral was a gay bar. (*Id*. at p. 53.) To the extent Petitioner means to argue that the testimony, once again, bolstered the credibility of Complainant 2, his argument fails for the reasons stated above: he can show no prejudice where the jury obviously rejected Complainant 2's credibility. To the extent Petitioner means to argue that he was prejudiced by association with a gay bar, the Michigan Court of Appeals analysis is instructive:

> It was unlikely to shock the jury that Algra had visited a gay bar to drive his boyfriend's brother because Algra openly admitted that he was homosexual and shared living arrangements with his boyfriend. Nor did the evidence strongly refute Algra's statement

> that he lacked funds to travel over spring break [the foundation of his alibi], since a brief drive is different from taking a vacation.

(Mich. Ct. of Appeals Op., ECF No. 1-1, PageID.72.) The reasoning of the court of appeals is persuasive. Petitioner has failed to show how the state-court's rejection of Petitioner's claims was contrary to or an unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d). Accordingly, his claim is without merit.

### D. Admission of a Facebook chat between Complainant 1 and witness Cam Wessels

Finally, Petitioner complains that the prosecutor introduced a transcript of a Facebook chat between defense witness Cam Wessels and Complainant 1 to impeach Mr. Wessels. Petitioner contends the evidence was inadmissible hearsay. Petitioner raised the issue in the state courts as purely an issue of state law. Issues of state law are not cognizable on habeas review. As previously stated, the Supreme Court explained in *Estelle*, 502 U.S. at 62, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68.

To the extent Petitioner intended to raise a Sixth Amendment Confrontation Clause challenge to the admission of this hearsay evidence, his claim is without merit. The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. CONST., Am. VI. The Supreme Court has long read this right as securing an adequate opportunity to cross-examine adverse witnesses. *United States v. Owens*, 484 U.S. 554, 557 (1988) (citing *Mattox*

*v. United States*, 156 U.S. 237, 242-43 (1895) and *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)).

As stated by the Court:

> Our own decisions seem to have recognized at an early date that it is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause:
>
>> "The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States*, 156 U.S. 237, 242-43 (1895).
>
> Viewed historically, then, there is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination.

*California v. Green*, 399 U.S. 149, 157-58 (1970).

In *Green*, the Court compared the purposes of confrontation with the dangers in admitting an out-of-court statement. Confrontation "(1) insures that the witness will give his statements under oath – thus impressing the witness with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for discovery of truth'; and (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." *Green*, 399 U.S. at 158. Although an out-of-court statement may not have been subject to any of these protections, it regains the lost protections if the declarant is present and testifying at trial. *Id.*

at 158. Further, an inability to cross-examine the witness at the time the out-of-court statement is made is not of crucial significance as long as the witness is subject to full and effective cross-examination at trial. *Id.* at 159. Similarly, the jury's inability to view the declarant's demeanor when the statement was made is not important when the jury may view that witness at trial either affirming or disavowing the statement. *Id.* at 160. In other words, contemporaneous cross-examination before the jury is not so much more effective than subsequent examination at trial that it must be made the touchstone of the Confrontation Clause. *Id.* at 161. Thus, where the declarant testifies and is cross-examined, "our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem." *Green*, 399 U.S. at 162; *see also Owens*, 484 U.S. at 560 (inquiry into the "indicia of reliability" or the "particularized guarantees of trustworthiness" of the out-of-court statements is not called for when the declarant is available at trial and subjected to unrestricted cross-examination, because "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements").

The declarant, Complainant 1, testified at trial and Petitioner's counsel subjected him to unrestricted cross-examination. Petitioner's Confrontation Clause argument has no merit.

### Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:   September 16, 2016              /s/ Paul L. Maloney
                                         Paul L. Maloney
                                         United States District Judge